UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT L.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C19-755-MLP

ORDER

## I.      INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in how she weighed the medical opinion evidence and Plaintiff's subjective complaints. Plaintiff also claims that the ALJ erred in failing to assess the impact of Plaintiff's obesity and sleep apnea on his ability to function. (Dkt. # 9 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.      BACKGROUND

Plaintiff is 41 years old and has a high school education. AR at 100. Plaintiff has worked as a warehouse worker, systems programmer, computer programmer, and helpdesk person. *Id.* at

59-60. Plaintiff meets the insured status requirements through December 31, 2021. *Id.* at 17. Plaintiff was last gainfully employed in June 2016. *Id.*

On June 18, 2016, Plaintiff applied for benefits, alleging disability as of June 17, 2016. AR at 15, 101. Plaintiff's claimed impairments consisted of general anxiety, social anxiety, depression, autism, and foot, back, hip, and hand pain. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 15. After the ALJ conducted a hearing on March 8, 2018 in Seattle, Washington, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 29-30.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since June 17, 2016.

Step two: Plaintiff has the following severe impairments: obesity, chronic pain disorder, affective disorder, anxiety disorder, Autism Spectrum Disorder and obstructive sleep apnea.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: As relevant to this appeal, the ALJ found that Plaintiff can perform light work with some exceptions. Plaintiff can sit, stand, and walk for six hours each in an eight-hour day, can frequently balance, stoop, and climb ramps and stairs, can occasionally kneel, crouch, and crawl, and cannot climb ladders, ropes, or scaffolds. Plaintiff has sufficient concentration for complex and detailed tasks, which can be accomplished in two-hour increments with the usual breaks, should not work in a job where working with the public is the focus of the job, but can interact occasionally with the public. Plaintiff can work in the same room with a small group of coworkers, possibly up to ten, but should not work in coordination with coworkers. Plaintiff can interact occasionally with supervisors and can adapt to occasional workplace changes.

Step four: Plaintiff can perform past relevant work.

Step five: In the alternative, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

AR at 17-29.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

# IV.    DISCUSSION

Plaintiff claims that the ALJ failed to account for significant limitations of functioning assessed by the non-examining State agency psychologists, the examining psychologists, and the treating mental health therapist. (Dkt. ## 9 at 2; 11 at 7.) Plaintiff also argues that the ALJ erred by failing to accommodate all of the limitations alleged by Plaintiff and failed to properly consider the impact of Plaintiff's obesity on his ability to perform basic work activities on a regular and continuing basis. *Id.* As a result, the ALJ's RFC findings and hypothetical questions were incomplete, such that substantial evidence did not support the ALJ's findings at steps four and five. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007). The Court addresses each claim of error below.

## A.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

### 1.    *Standards for Reviewing Medical Opinions*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If an ALJ rejects the opinion of a treating physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.

1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157
F.3d at 725.

### 2. *State Agency Psychologist Consultants*

Plaintiff claims that the ALJ erred by failing to accommodate in her RFC all of the
limitations identified by the State agency psychologist consultants despite giving portions of
their opinions significant weight. (Dkt. # 9 at 3; *see also* AR at 26 ("The social interaction
limitations described by the State agency psychological consultants are given significant
weight.").) Specifically, Plaintiff takes issue with the ALJ's decision to give no weight to the
State agency psychological consultants' opinions that, although Plaintiff was able to perform
work with reasonable breaks during the workday, Plaintiff would experience "occasional" lapses
in concentration and attention. (*Id.* at 3-4 (citing AR at 25-26).) As explained by the ALJ,
"occasionally" under the regulations typically means occurring from "very little" to "up to one-
third of the time," and would generally total no more than about 2 hours of an 8-hour workday.
AR at 25 (citing SSR 96-9p; SSR 83-10). The ALJ rejected this interpretation.

The ALJ began her analysis by noting that the term "occasionally," as used in the
regulations, only applied to physical, manipulative, or environmental limitations, and it was not
clear whether the State agency psychologist consultants were using the term as a term of art
under the regulations or its plain meaning. *Id.* at 26. The ALJ correctly noted that there is a
significant range in the stated limitation under the regulations with respect to lapses in
concentration and attention from "very little" to "up to one-third of the time." The ALJ
ultimately rejected the interpretation of "up to one-third of the time," concluding that this
definition is reserved under the regulations for only physical limitations and not to lapses in
concentration and attention. *Id.* at 26. Instead, the ALJ found that the consultants intended the

word's normal meaning and usage, *i.e.*, "on occasion," "intermittent," or "on an infrequent basis." *Id.*

In addition to noting that the term is used in the regulations only to describe physical limitations, the ALJ also based her analysis on the fact that both State agency psychologist consultants ultimately determined that Plaintiff was not disabled, and that Plaintiff would be able to complete a normal workday and work week in spite of the occasional lapses in concentration and attention. AR at 26. The ALJ is responsible for resolving ambiguities in the medical evidence and for translating and incorporating medical opinions into a succinct RFC assessment. *See Andrews*, 53 F.3d at 1039; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.") Accordingly, the Court finds that the ALJ's decision not to include a limitation based on concentration, persistence, or pace in the RFC assessment was supported by substantial evidence in the record.

Plaintiff also seems to argue in his opening brief that the ALJ erred in her evaluation of the State agency psychologist consultants by failing to consider Plaintiff's need to have a predictable work environment, a structured setting, or other special supports in her RFC. (Dkt. # 9 at 8.) Yet, Plaintiff does not even cite the consultants' reports for this limitation and instead relies on a letter provided by a former treating provider, Mark McGrosky, Ph.D. (*Id.*) The letter only states that Plaintiff would "benefit significantly from vocational rehabilitation services." AR at 383. The Commissioner did not respond to this argument. In his reply, Plaintiff argues that the Commissioner therefore conceded that point and then cites again to the Dr. McGrosky letter and,

for the first time, cites to two provisions in the State agency psychologist consultants reports where they both state that Plaintiff "will benefit from a predictable work environment." AR at 95, 112. But, both consultants noted just prior to making this statement that Plaintiff was "not significantly limited" in this area. *Id.* Accordingly, the Court finds that the ALJ's decision not to include any limitation based on Plaintiff's need for a predictable work environment was based on substantial evidence.

### 3. *Kate K. Lund, Psy.D. and April Walter, Psy.D.*

Plaintiff next argues that the ALJ erred by not giving legally sufficient reasons in support of her weighing of Dr. Lund's and Dr. Walter's opinions. (Dkt. # 9 at 9.) The ALJ gave only some weight to Dr. Lund's opinion as inconsistent with Plaintiff's "successful" work activity as indicated by the offer to extend his temporary position that Plaintiff declined. AR at 26. The ALJ gave Dr. Walter's opinion little weight for the same reason as Dr. Lund's. *Id.* at 27. Plaintiff argues this was an error because the Plaintiff reported that he was desperate to leave the position because the environment was too intense which is why he declined the extension. (Dkt. # 9 at 9, 10-11.) The record, however, is unclear as to the basis for Plaintiff's decision to decline the extension of his temporary employment. *Cf.* AR at 661 (Plaintiff reported that his employer wanted to extend his contract, but he would not do that. Plaintiff intended to volunteer his time on a voiceover project.) *with* AR at 388 (Plaintiff stated that the environment was too intense, it was loud and aggressive, he was desperate to get out.).

Whether Plaintiff declined to extend his employment contract because the environment was too intense, as argued by Plaintiff, or he preferred to volunteer his time on a voiceover project, as argued by the Commissioner, is not the question the Court must resolve. The Court must ask whether the ALJ's interpretation of the records is reasonable. *See Magallanes*, 881 F.2d

at 750; *see also Andrews*, 53 F.3d at 1039 (holding that the ALJ is responsible for resolving ambiguities). Because the reason Plaintiff did not renew his temporary employment is susceptible to more than one rational interpretation, the Commissioner's interpretation must be upheld. *Thomas*, 278 F.3d at 954. Accordingly, the Court finds that the Commissioner gave specific and legitimate reasons supported by substantial evidence for giving only some or little weight to the opinions of Dr. Lund and Dr. Walter.

### 4. *Therapist Kahle*

Next, Plaintiff argues that the ALJ erred by giving little weight to the check-box form prepared by Plaintiff's treating mental health provider, Therapist Kahle. (Dkt. # 9 at 10). Plaintiff argues that the reasons given by the ALJ were not germane, as required in the Ninth Circuit. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ gave little weight to Therapist Kahle because the limitations she suggests were inconsistent with the claimant's successful work activity just a few months earlier "as indicated by the offer to extend his temporary contract." AR at 27. As the Court found above, the ALJ's interpretation as to why Plaintiff was not extending his temporary position was a rational interpretation of an ambiguity in the record. Accordingly, the Court finds that the ALJ's reasoning for giving Therapist Kahle's opinion little weight was germane and supported by substantial evidence. The Court also was persuaded by the Commissioner's argument that Therapist Kahle's opinion that Plaintiff could "likely" perform simple, routine tasks as well as more complex tasks, but that he could not manage stress, which would affect his ability to carry out job tasks in an accurate and consistent manner, was too speculative. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

**B.      The ALJ Did Not Err In Considering Plaintiff's Subjective Allegations**

Plaintiff argues that the ALJ failed to give specific, clear, and convincing reason for rejecting Plaintiff's testimony. (Dkt. # 9 at 12.) Plaintiff argues that the ALJ erred by relying on a misunderstanding of Plaintiff's activities of daily living and failing to consider the impact of Plaintiff's depression on his perceived level of pain. In weighing a plaintiff's own statements, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. AR at 21.

*1.      Misunderstanding of Plaintiff's Activities of Daily Living*

Plaintiff argues that the ALJ misunderstood or mischaracterized the evidence by focusing on Plaintiff's cognitive abilities while ignoring the evidence that Plaintiff was consistently diagnosed with severe depression and anxiety, had significant social limitations, observed to have blunted affect, depressed mood, and little ability to sustain work activity on a consistent basis. (Dkt. # 9 at 12 (citing record).) At the hearing, Plaintiff testified that his anxiety and

depression caused him to resign from at least two of his positions: his anxiety interferes with his work when he is there and his depression causes him to miss work. AR at 49, 53. Overall, Plaintiff testified that his anxiety is "kind of the one that keeps me from holding down the job the most." *Id.* at 53. The ALJ rejected the extremely limiting mental health findings related to depression and anxiety because even when Plaintiff presented as tearful, depressed, or anxious, the medical records would also indicate that Plaintiff was pleasant and cooperative or presented with many normal observations and few minimal symptoms. *Id.* at 23 (citing record). The ALJ further noted that when Plaintiff presented as tearful, it was in the context of discussing past traumas or specific situations or tearful when discussing his financial fears and worries about being on disability. *Id.* at 23, 346. Otherwise the treatment records do not reflect observations of severe psychiatric symptoms during a significant number of Plaintiff's appointments. *Id.* Even if the medical records could be interpreted to support Plaintiff's debilitating depression and anxiety, Plaintiff's activities of daily life are a sufficient reason to discount the severity of the limitations as expressed by Plaintiff.

The ALJ found that Plaintiff's daily activities similarly do not support the limitations related to depression and anxiety as expressed by Plaintiff. The ALJ cited the following daily activities: (1) Plaintiff was able to work a number of short term jobs (AR at 23); (2) Plaintiff was able to make YouTube videos for two to three hours a week even though he had to overcome his stage fright to sit down and record his videos (*id.* at 23, 43); and (3) Plaintiff claimed that he resigned from jobs due to anxiety and depression but the treatment records imply different reasons for resigning. *Id.* at 23, 661 (Plaintiff testified at the hearing that he did not renew the temporary job because of anxiety but Plaintiff previously told one treatment provider that he was not renewing his temporary job in the context of expressing his pride and excitement about

pursuing his voiceover projects and Plaintiff never mentioned his difficulty in performing the job or his mental health symptoms during the visit). The Court finds that the above activities of daily living cited by the ALJ is substantial evidence that the Plaintiff's allegations of extremely limiting symptoms are not consistent with the evidence in the record.[3]

### C. The ALJ Properly Evaluated the Impact of Plaintiff's Obesity and Sleep Apnea

Plaintiff weighed over 300 pounds, had a high body mass index of 64.89, and was diagnosed with sleep apnea. AR at 350, 386, 371. Plaintiff contends that the ALJ recognized these conditions as severe impairments but failed to address them in his RFC. (Dkt. # 9 at 16.) The ALJ stated that she considered Plaintiff's obesity and its effects in combination with other impairments at all steps of the sequential analysis. AR at 18. Plaintiff contends that the ALJ should have found further limitations based on obesity such as: how Plaintiff's obesity impacts his depression, his need to sleep during the day, or his ability to function over time, due to mental impairments, mental impairments combined with pain, and/or physical impairments. (Dkt. # 11 at 6.) Plaintiff's stated limitations are either vague or were already considered by the ALJ in her RFC findings. Because Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of heris obesity that the ALJ failed to consider, the Court finds no error with the ALJ's analysis. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th

---

[3] The ALJ did mischaracterize the treatment note that stated that the Plaintiff was able to enjoy going out in public spaces, such as visiting the Space Needle. AR at 24. This treatment note appears to reference a "homework" assignment where in Plaintiff would have to go out to public places and Plaintiff had visited the Space Needle as part of the assignment. *Id.* at 660. Although Plaintiff appeared to tell the provider that he enjoyed it, it is hardly evidence that he enjoys going to public places. Regardless, the mischaracterization by the ALJ is harmless given the other reasons stated above. a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

Cir. 2005); *see also Garcia v. Comm'r of SSA*, 498 Fed. Appx. 710, 712 (9th Cir. 2012) (the ALJ's finding that obesity did not impact the RFC was proper where the plaintiff "did not provide any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis") (internal quotation marks omitted); *Hoffman v. Astrue*, 266 Fed. Appx. 623, 625 (9th Cir. 2008) ("The ALJ's failure to consider Hoffman's obesity in relation to his RFC was proper because Hoffman failed to show how his obesity in combination with another impairment increased the severity of his limitations.").

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 27th day of December, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge